## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

TOBY KRISTOPHER PAYNE,           §
Institutional ID No. 1720023     §
                                 §
                    Plaintiff,   §
                                 §
v.                               §        CIVIL ACTION NO. 1:18-CV-00048-C
                                 §
MICHAEL D. DEWITT, et al.,       §
                                 §
                    Defendants.  §

## ORDER

Plaintiff Toby Kristopher Payne, proceeding *pro se* and *in forma pauperis*, filed this civil

rights complaint under 42 U.S.C. § 1983 against 18 officials employed by the Texas Department

of Criminal Justice (TDCJ). He alleges that the Defendants violated his religious rights under

the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000

(RLUIPA). He also complains that the Defendants violated his rights under the Eighth and

Fourteenth Amendments, the Americans with Disabilities Act, and the Rehabilitation Act.

The Court transferred the civil action to the United States Magistrate Judge for additional

screening. The Magistrate Judge ordered Plaintiff to complete a questionnaire pursuant to

*Watson v. Ault*, 525 F.2d 886, 892-93 (5th Cir. 1976). After receiving Plaintiff's response to the

questionnaire, the Magistrate Judge found that Plaintiff's claims required an answer and ordered

service of process on Defendants.

Defendants[1] filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6). In response, Plaintiff sought, and was granted, leave to supplement his complaint.

---

[1] The Office of the Attorney General appeared on behalf of all named Defendants in this case, but it was unable to identify, and thus unable to represent two unnamed Defendants, listed as Defendant #14: "Unknown Defendant's Investigationg Officer(s) [all sic]," and Defendant #15: "Unknown Defendant's [sic] Counsel Substitute." To date, these unnamed defendants have not been properly identified and have not appeared in this case.

Defendants filed an amended motion to dismiss to include Plaintiff's newly supplemented claims. Again, Plaintiff sought, and was granted leave to supplement his claim.

Defendants filed their second amended motion to dismiss (Doc. 45) and brief in support on March 26, 2019.[2] Plaintiff filed a response (Doc. 52) but was denied leave to supplement his complaint again. The United States Magistrate Judge entered a Report and Recommendation (Doc. 55), recommending that the Court grant Defendants' motion and dismiss all of Plaintiff's claims. Plaintiff filed a response with objections to the Report and Recommendation (Doc. 58), as well as two motions for leave to amend or supplement his complaint (Docs. 56 and 59).

The Court has conducted an independent review of the record in this case. As explained below, the Court finds that the Report and Recommendation of the United States Magistrate Judge should be **ADOPTED** with the following **modification**: Plaintiff should be **GRANTED** leave to supplement his complaint to request declaratory and injunctive relief with respect to the ongoing effect of his relevant prison disciplinary convictions. Defendants' Motion to Dismiss (Doc. 45) should be **GRANTED in part,** so that all of Plaintiff's claims, except his supplemented RLUIPA claim, should be **DISMISSED** with prejudice.

As a result, the Court finds that Defendant Lorie Davis, in her official capacity as Director of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), should be required to answer or otherwise respond to Plaintiff's sole remaining claim—that TDCJ's continued enforcement of Plaintiff's relevant disciplinary convictions constitutes an ongoing violation of RLUIPA, for which he is entitled to injunctive relief.

Plaintiff's remaining requests to supplement should be **DENIED** as futile.

---

[2] The Court finds that the Defendants' second Amended Motion supersedes the first Amended Motion (Doc. 31). As a result, the first Amended Motion is DENIED as moot. The Magistrate Judge denied Defendants' original Motion as moot on December 20, 2018.

## 1. STANDARD UNDER RULE 12(B)

Rule 12(b)(6) allows dismissal if a plaintiff "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Court held that a complaint fails to comply with Rule 8 if it does not plead "enough facts to state a claim of relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (holding that "to survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief–including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)).

The Court "must accept as true all of the factual allegations contained in the complaint" when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Twombly*, at 555. Furthermore,

> [t]he complaint is liberally construed in the plaintiff's favor, and all well-pleaded facts in the complaint are taken as true. The determining issue is not whether the plaintiff will ultimately prevail on the merits, but whether he is entitled to offer evidence to support his claim. Therefore, this court will not dismiss a plaintiff's claim, unless the plaintiff will not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in his complaint.

*Priester v. Lowndes County*, 354 F.3d 414, 418-19 (5th Cir. 2004) [internal citations and quotations omitted]; *see also Erickson*, at 94 ("a document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

## 2. ANALYSIS AND DISCUSSION

Plaintiff claims that the Defendants wrongfully delayed approval for him to grow a beard for religious purposes. He states that he made multiple requests for a religious exemption to the TDCJ grooming standards, but his requests were left unanswered for about 5 months because of a staffing shortage. During that time, he began growing his beard without approval and as a result, he received 5 disciplinary cases for failing to adhere to the TDCJ grooming standards. He alleges that the disciplinary cases were given as a result of "a targeted crack-down" by Defendant Sperry, who knew that the religious-exemption requests were not being processed because of the vacant beard-coordinator position, but ordered Robertson Unit staff to write disciplinary cases for any offender with a beard who was not already on the religious-exemption list. (Doc. 12 at 5).

Plaintiff complains that the collective punishments he received for the disciplinary cases forced him to shave his beard against his religious beliefs. He also asserts that although he was required to shave, he was not given proper grooming implements. He states that he "had to remove a razor blade from a razor, affix [it] to a comb, wet [his] beard with soap and water, and hack/chop/cut [his] beard off while in [his] cell." (Doc. 12 at 8).

Plaintiff alleges that while he has now been approved to have a beard for religious purposes, he still suffers the consequences of the wrongful disciplinary cases—namely, that his custody level was reduced to G5 status (close custody). He admits that his custody level has changed—he was promoted to G4 and then demoted back to G5—while this case has been pending. (Docs. 12 and 47). But he claims that the cumulative effect of the religious-beard disciplinary cases has set him back in earning a minimum custody status, which would allow him

4

to have contact visits with his family, attend school courses, and participate in mental health counseling. (Docs. 12 and 59-1).

Plaintiff alleges, based on the facts asserted above, that Defendants violated his rights under the First Amendment and RLUIPA. Plaintiff also claims that Defendants' actions violated his rights under the Americans with Disabilities Act and the Rehabilitation Act of 1973, as a result of his diagnosed mental illness. Finally, Plaintiff claims that Defendants retaliated against him and used excessive force.

Plaintiff asks for monetary relief as well as the removal of the five disciplinary cases from his prison record. And he now requests to supplement his complaint with a request for declaratory and injunctive relief.

### a. RLUIPA

Codified at 42 U.S.C. § 2000cc-1 et seq., RLUIPA prohibits the government from imposing a substantial burden on the religious exercise of a prisoner unless it is in furtherance of a compelling governmental interest and is the least-restrictive means of furthering that compelling governmental interest. A prisoner asserting a claim under RLUIPA must show (1) that he seeks to exercise a religious practice out of a sincerely held religious belief, and (2) that the government substantially burdened that practice. If the prisoner makes this initial showing, then the burden shifts to the government to meet the difficult compelling-interest and least-restrictive-means test. 42 U.S.C. § 2000cc-1(1); *Ali v. Stephens*, 822 F.3d 776, 782-83 (5th Cir. 2016).

As Defendants correctly note, RLUIPA does not permit suits brought against officials in their individual capacities or for the collection of money damages. *Sossomon v. Lone Star State of Texas*, 560 F.3d 316, 328-29 (5th Cir. 2009) *aff'd sub nom. Sossomon v. Texas*, 563 U.S. 277

(2011). RLUIPA allows a person to bring a claim against a government and obtain "appropriate relief." 42 U.S.C. § 2000cc-2.

Defendants are right that RLUIPA does not permit Plaintiff to bring individual-capacity claims or to collect monetary damages. As a result, the Court finds that Plaintiff's claims under RLUIPA against any defendant in his or her individual capacity should be **DISMISSED** for failure to state a claim. Additionally, Plaintiff's claims for monetary damages under RLUIPA should be **DISMISSED** for failure to state a claim.

Defendants acknowledge that RLUIPA protects an inmate's right to grow a beard for religious purposes. They do not contest that Plaintiff requested to grow his beard out of a sincerely held religious belief. Nor do they challenge Plaintiff's contention that the 5-month delay in processing the exemption request burdened his religious exercise. Instead, they argue that the burden has been removed because Plaintiff's request for a religious-beard-exemption was eventually approved. They ask that the Court dismiss Plaintiff's RLUIPA claims as moot.

Defendants are right that most of Plaintiff's RLUIPA claims are moot. Plaintiff admits that his request for a religious beard exemption was approved on December 13, 2017, and that he now wears a fully-grown beard with no interference from TDCJ officials. Thus, the Court finds that any burden caused by the delay in processing and approving Plaintiff's request has been lifted. But Plaintiff alleges that his religious exercise was not only burdened by the lengthy delay in approving his beard, but by Defendants actively punishing him for practicing his faith in the meantime.

Defendants do not directly address the alleged burden imposed by the five disciplinary convictions Plaintiff received in the interim. Rather, they argue that the Eleventh Amendment bars Plaintiff's suit against Defendants in their official capacities because Plaintiff seeks only

6

retroactive—not prospective—relief. The Eleventh Amendment generally bars federal courts from hearing claims against state governments. But *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny, carve out a narrow exception, which allows state officials to be sued in their official capacity only for prospective injunctive relief. The *Ex Parte Young* exception applies only when there is 1) an ongoing violation of federal law and 2) a request for prospective relief.

Defendants assert that the disciplinary actions against Plaintiff for growing his beard before obtaining approval amount to a violation of TDCJ policy, not federal law. And even if it is a violation of federal law, Defendants argue that Plaintiff's request for removal of the disciplinary cases from his record cannot be properly characterized as prospective.

But if Plaintiff's right to grow a religious beard is protected by RLUIPA, then punishing him for exercising that right arguably violates federal law. And it stands to reason that continuing to use the disciplinary cases against Plaintiff might constitute an ongoing violation of federal law.[3] The Magistrate Judge similarly found that TDCJ's enforcement of disciplinary punishments given in violation of RLUIPA is a violation of federal law, not just TDCJ policy. However, the Magistrate Judge recommended that Plaintiff's claim be dismissed to the extent that the relief he requested was retroactive rather than prospective.

Unsurprisingly, Plaintiff now requests to supplement his claim to expressly seek prospective injunctive relief "that the five disciplinary actions . . . be considered in context in future disciplinary issues." The Court finds that Plaintiff's request to supplement his RLUIPA claim to request injunctive relief should be **GRANTED**. Thus, Plaintiff has pleaded enough

---

[3] The Court's discussion here should not be interpreted as commentary or findings on the merits of Plaintiff's RLUIPA claim. This analysis constitutes only a screening of Plaintiff's pleadings pursuant to the standards of Rule 12(b) and § 1915.

facts to proceed at this stage of the case on his official-capacity claim[4] under RLUIPA for injunctive relief regarding the ongoing effect of his disciplinary actions. Plaintiff has listed each named defendant in his or her official capacity. But with respect to his remaining RLUIPA claim, no named official has a separate identity from TDCJ as an entity. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). The Court finds, then, that Plaintiff's RLUIPA claim should proceed against only one defendant in her official capacity as a representative of TDCJ.

As a result, Defendant Lorie Davis, in her official capacity as the Director of the TDCJ-CID, should be required to answer or otherwise respond. Specifically, the Court finds that the following questions remain unbriefed:

(1) Whether TDCJ's delay in processing Plaintiff's request for a religious-beard exemption violated RLUIPA,

(2) Whether TDCJ's enforcement of its general grooming standards through disciplinary action and punishment—after Plaintiff requested but before he was approved for a religious exemption—violated RLUIPA,

(3) Whether continuing to observe the five disciplinary actions is an ongoing violation of federal law, and

(4) Whether the injunctive relief Plaintiff now seeks is appropriate under RLUIPA and the Eleventh Amendment.

The Court finds that the Magistrate Judge's recommendation was correct as to all of Plaintiff's other claims, and the Defendants second Amended Motion to Dismiss (Doc. 45) should be **GRANTED** except as to the RLUIPA claim described above.

### b. First Amendment

As a prisoner, Plaintiff's right to grow a religious beard is protected by RLUIPA, but not the First Amendment. RLUIPA provides greater protection than the First Amendment. *Holt v.*

---

[4] "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent;" thus, RLUIPA permits suits against governmental agents in their official capacities. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690 n.55 (1978).

*Hobbs*, 574 U.S. 352 (2015). The First Amendment permits prison policies that incidentally burden the religious rights of prisoners as long as the regulation is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Green v. Polunsky*, 229 F.3d 486, 490 (5th Cir. 2000).

The Fifth Circuit has approved TDCJ's grooming policy as reasonably related to legitimate penological interests. *Green v. Polunsky*, 229 F.3d 486, 490 (5th Cir. 2000). And the Supreme Court has found that similar prison grooming policies offend RLUIPA but not the First Amendment. *Holt v. Hobbs*, 574 U.S. 352 (2015). Thus, Plaintiff has failed to state a claim under the First Amendment.

To the extent Plaintiff alleges First Amendment retaliation, his claim still fails. "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998)). As described above, Plaintiff did not have a constitutional right to grow his beard. So, to the extent Plaintiff alleges that his prison disciplinary cases were issued in retaliation for his religious practice, he has failed to state a claim. Plaintiff also alleges that Defendants acted in retaliation, generally, for an adverse result in a prior civil action brought by other prisoners in other units. But Plaintiff has failed to connect any alleged retaliatory intent to his own exercise of a constitutional right. Thus, Plaintiff has failed to state a claim for First Amendment retaliation claim.

Finally, Plaintiff also attempts to incorporate retaliation claims that he has raised in other pending actions before this Court. He states that Defendants Merchant and LaFrance have retaliated against him for filing the complaint in this case. He states that he hopes the claims

9

from his other case will "lend credence to the asserted retaliatory intentions of the defendants from the outset or at any point during the factual allegations asserted in this action." (Doc. 58 at 4-5). Plaintiff acknowledges that he has raised this claim in a separate proceeding, which is currently pending before the magistrate court in Civil Action No. 1:18-CV-208. As a result, the Court will not consider it here.

### c. Eighth Amendment

Plaintiff has also failed to state a claim under the Eighth Amendment. Plaintiff alleges that he has been subjected to cruel and unusual punishment. It is unclear which facts he believes support that claim. However, Plaintiff has pleaded no facts, which when taken as true, would entitle him to relief under the Eighth Amendment. To state a claim under the Eighth Amendment based on conditions of confinement, a prisoner must establish both an objective element and a subjective element. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

First, he must show that the deprivation was objectively serious—that it "violated contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1991); *Walker v. Nunn*, 456 Fed. App'x 419, 422 (5th Cir. 2011). "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citation omitted).

Plaintiff fails to plead any facts that satisfy the objective component of an Eighth Amendment claim. Plaintiff's complaint about inadequate or delayed access to grooming implements fails to state an objectively serious deprivation under the Eighth Amendment. Likewise, his complaints that Defendants failed to timely fill the beard coordinator position, and that Defendants targeted him for disciplinary action before his request was approved are not the

sort of extreme deprivations required to state a claim of cruel and unusual punishment. *See Hudson*, 503 U.S. at 9. Because Plaintiff has not met the objective component, he has failed to state a claim for cruel and unusual punishment under the Eighth Amendment.

To the extent that Plaintiff seeks to supplement his claim with allegations related to an excessive-use-of-force incident, the Court finds that his request should be **DENIED**. These allegations, described in Plaintiff's response to the Magistrate Judge's Report, do not relate back to his original complaint. Further, Plaintiff acknowledges that he has raised this claim in a separate proceeding, which is currently pending before the magistrate court in Civil Action No. 1:18-CV-208.

### d. Fourteenth Amendment

Plaintiff claims generally that his due process rights were violated. "Prisoners charged with rule violations are entitled to certain due process rights under the Fourteenth Amendment when the disciplinary action may result in a sanction that will impinge upon a liberty interest." *Hodges v. Johnson,* No. 3:01-CV-665-P, 2001 WL 493151 at *1 (N.D. Tex. May 7, 2001). The Supreme Court has held that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the [prisoner] in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995).

It is well settled that the Due Process Clause does not protect every change in the conditions of confinement having a substantially adverse impact on a prisoner. *Meachum v. Fano,* 427 U.S. 215, 224 (1976). The Due Process Clause protections are not implicated by a change in Plaintiff's custody level or line-class status. The Fifth Circuit has held that "the mere

11

opportunity to earn good time credits" does not constitute a "constitutionally cognizable liberty interest sufficient to trigger the protections of the Due Process Clause." *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996). Plaintiff's custodial classification will not inevitably affect the duration of his sentence. *Id.* To the extent that Plaintiff is challenging the loss of commissary, recreation, and telephone privileges, the Due Process Clause is not implicated by these changes in the conditions of his confinement. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997). Plaintiff has failed to state a claim under the Due Process Clause of the Fourteenth Amendment.

### e. ADA and RA

Plaintiff claims, in conclusory fashion, that Defendants discriminated against him because of his mental illness. Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA prohibits discrimination by public entities, while the similarly-worded Rehabilitation Act (RA) applies to federally-funded programs and activities. 29 U.S.C. § 794(a). The same legal standards and definitions apply to both Acts. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). To state a claim under the ADA and RA, a plaintiff must show that (1) he has a qualifying disability, (2) he is being denied the benefits of services, programs, or activities or otherwise being discriminated against by a public entity, and (3) he is being discriminated against because of his disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

Plaintiff claims that Defendants have discriminated against him because of his diagnosed mental illness. First, Plaintiff has not pleaded enough facts to establish that his mental illness

12

"substantially limits one or more major life activities." *See* 42 U.S.C. 12102(1)(A). But even assuming that his schizoaffective disorder is a qualifying disability, Plaintiff fails to plead any facts to establish causation. In his motion to supplement, Plaintiff attempts to clarify his claim. He states that he was denied access to the dayroom, outside recreation activities, full commissary privileges, visitation privileges, telephone privileges, chow hall privileges, law library privileges, school courses, and mental health counseling. However, he states that these privileges were denied because of his G5 custody level. Plaintiff has pleaded no facts to suggest that he was denied any of these programs or activities by reason of his mental illness. As a result, he has failed to state a claim under the ADA and RA. As a result, these claims should be DISMISSED.

For the reasons stated above, the Court ORDERS:

1. Plaintiff's Motion to Supplement (Doc. 59) is **GRANTED** in part as described in this Order.

2. Defendant Lorie Davis, in her official capacity as Director of TDCJ-CID, shall answer or otherwise respond **within 14 days of the date of this Order**, to Plaintiff's remaining RLUIPA claim as supplemented.

3. Defendants' Motion to Dismiss is **GRANTED** in part. All Plaintiff's claims, except the RLUIPA claim described herein against Lorie Davis in her official capacity, are dismissed with prejudice for failure to state a claim upon which relief can be granted.

4. All relief not expressly granted is denied and any pending motions are denied.

There is no just reason for delay in entering a final judgment and final judgment should be entered as to the above-described Defendants and claims pursuant to Federal Rule of Civil Procedure 54(b).

JUDGMENT SHALL BE ENTERED ACCORDINGLY.

Dated September 9 , 2019.

SAM R. CUMMINGS
Senior United States District Judge